# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| FORESIGHT ENERGY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-2266 CAS |
| | ) | |
| CERTAIN LONDON MARKET | ) | |
| INSURANCE COMPANIES, IRONSHORE | ) | |
| INSURANCE LTD, ALLIED WORLD | ) | |
| ASSURANCE COMPANY LTD., | ) | |
| NATIONAL INDEMNITY COMPANY, | ) | |
| MARKEL BERMUDA LIMITED, | ) | |
| CERTAIN UNDERWRITERS AT LLOYD'S | ) | |
| OF LONDON, WESTCHESTER SURPLUS | ) | |
| LINES INSURANCE COMPANY, ACE | ) | |
| AMERICAN INSURANCE COMPANY, | ) | |
| AXIS SURPLUS INSURANCE COMPANY | ) | |
| (US), ACE BERMUDA INSURANCE LTD., | ) | |
| MONTPELIER REINSURANCE LTD, | ) | |
| LLOYD'S SYNDICATE 0382 HDU, ASPEN | ) | |
| SPECIALTY INSURANCE COMPANY, | ) | |
| LANDMARK AMERICAN INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER OF REMAND

This matter is before the Court on plaintiff Foresight Energy, LLC's ("Foresight") motion

to remand the case to the Circuit Court for the City of St. Louis, State of Missouri. The motion is

opposed by the nine remaining defendants, Certain London Market Insurance Companies ("London

Market Insurers"), National Indemnity Company ("National Indemnity"), Westchester Surplus Lines

Insurance Company ("Westchester"), Certain Underwriters at Lloyd's of London ("Lloyd's"), ACE

American Insurance Company ("ACE American"), AXIS Surplus Insurance Company (US)

("AXIS"), Lloyd's Syndicate 0382 HDU ("Syndicate 382"), Aspen Specialty Insurance Company

("Aspen"), and Landmark American Insurance Company ("Landmark") (collectively the "Nine Insurers"). The motion is fully briefed and ready for review. For the following reasons, the Court concludes that it lacks subject matter jurisdiction over this action, and therefore must grant Foresight's motion to remand.

## I. Background

This action was filed in the Circuit Court of the City of St. Louis on August 4, 2017. The plaintiff is Foresight, a limited liability company organized under the laws of the State of Delaware with a principal place of business in the City of St. Louis, Missouri. Foresight, through wholly-owned subsidiaries, owns the Deer Run Mine, a "longwall" coal mine located in Hillsboro, Illinois (the "Hillsboro mine"). On or about March 26, 2015, the Hillsboro mine was evacuated due to a spontaneous combustion event. Mining operations have been suspended since that time pursuant to an order issued by the Mine Safety and Health Administration.

Foresight purchased insurance coverage for the Hillsboro mine in a complex arrangement involving a "Quota Share Property Damage / Time Element Policy" (the "Main Policy") with multiple layers of coverage. Fourteen separate insurers each issued a policy with unique market reference and/or policy numbers. Five of the insurers, including remaining defendants Lloyd's, Westchester, ACE American, and AXIS, provided insurance policies to Foresight in the primary layer, which attach to the Main Policy. Four insurers, including remaining defendants London Market Insurers and National Indemnity, subscribed to the Main Policy and issued quota share primary policies, sharing a portion of the risk according to a fixed percentage. Five insurers, including remaining defendants Syndicate 0382, Aspen, and Landmark, issued quota share policies in the excess layer.

At the time of the spontaneous combustion event, the Hillsboro mine was insured for "all perils" of "direct physical loss of or direct physical damage to the Property Insured" resulting from an "Occurrence," as well as business interruption costs. Foresight claims that as a result of the spontaneous combustion event, it has incurred in excess of $300 million in direct property losses or damage, business interruption, and other losses and costs. The insurers have provided advances to Foresight in the amount of $43,331,773.

On August 15, 2017, Foresight filed a Corrected Petition in the Circuit Court for the City of St. Louis, asserting state law claims for declaratory judgment, breach of contract, and statutory vexatious refusal to pay a claim against all fourteen of the Hillsboro mine's insurers: Chubb Bermuda Insurance Ltd. (formerly known as ACE Bermuda Insurance Ltd.) ("Chubb"), Ironshore Insurance Limited, Markel Bermuda Limited, Allied World Assurance Company Ltd., Montpelier Reinsurance Ltd., London Market Insurers, National Indemnity, Lloyd's, Westchester, ACE American, AXIS, Syndicate 0382, Aspen, and Landmark.

On August 18, 2017, defendant Chubb removed the action to this Court asserting that federal question jurisdiction exists pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 202 and 205 (2012) ("FAA"), as the insurance policy it issued to Foresight contained an arbitration provision mandating that any disputes or controversies arising under the policy be arbitrated in London, England under the Arbitration Act of 1996 of the United Kingdom. Chubb asserted that its policy's arbitration provision is an international arbitration agreement subject to a multinational treaty, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 21 U.S.T. 2517, *adopted* June 10, 1958 (entered into force with respect to the United States Dec. 29, 1970).

Specifically, Chubb's Notice of Removal cited Section 202 of the FAA, which provides that

"[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial . . . falls under the Convention" unless the agreement arises out of a relationship "entirely between citizens of the United States." 9 U.S.C. § 202. Section 205 of the FAA authorizes the removal to federal court of state court actions involving an arbitration agreement that falls under the Convention, as follows:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205. No other defendant joined in Chubb's Notice of Removal or filed a separate notice of removal, and the Notice of Removal asserted that the consent of other defendants was not required under the Convention. (Doc. 1 at 4, ¶ 15.)

Foresight filed the instant motion to remand on September 18, 2017. On September 26, 2017, Foresight, Chubb, Ironshore Insurance Limited, Markel Bermuda Limited, Allied World Assurance Company Ltd., and Montpelier Reinsurance Ltd. filed a Joint Motion to Stay or Defer Plaintiff's Motion to Remand (Doc. 30), after these defendants obtained an ex parte anti-suit injunction from the High Court of Justice, Queen's Bench Division, Commercial Court in London, England, prohibiting Foresight from litigating this action any further against those five defendants based on the London arbitration agreement in their policies. On January 16, 2018, Foresight dismissed with prejudice all claims against these five defendants. Foresight did not dismiss its claims against the Nine Insurers, and the motion to remand remains pending as to them.

## II.  Legal Standard

The party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied.  <u>Green v. Ameritrade, Inc.</u>, 279 F.3d 590, 596 (8th Cir. 2002).  Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand.  <u>Central Iowa Power Co-op. v. Midwest Indep. Trans. Sys. Operator, Inc.</u>, 561 F.3d 904, 912 (8th Cir. 2009).  In determining whether a claim "arises under" federal law, courts must be "mindful that the nature of federal removal jurisdiction—restricting as it does the power of the states to resolve controversies in their own courts—requires strict construction of the legislation permitting removal."  <u>Nichols v. Harbor Venture, Inc.</u>, 284 F.3d 857, 861 (8th Cir. 2002) (citing <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-09 (1941)).  The burden of proof is therefore on the Nine Insurers to establish that the Court has subject matter jurisdiction over this action.

## III.  Policy Language

Each of the insurance policies between Foresight and the Nine Insurers (collectively the "Policies") contain identical language regarding arbitration in all material respects and provide that the polices are governed by Missouri law.  (Doc. 26 at 6.)  Relevant to the present issue is Clause K of the General Insuring Conditions of the Policies, which provides:

> K.  **Dispute Resolution and Governing Law and Jurisdiction**
>
> It is understood and agreed that this Insurance shall be governed by and construed in accordance with the law and practice of the country or state specified in Item H of the Declarations or such other country or State as may otherwise be agreed with the Insurers and endorsed to this Policy.
>
> In the event that any provision of this Policy is unenforceable under the law governing this Policy because of non-compliance with any statute or other

legislation, then this Policy shall be deemed to be enforceable with the same effect as if it complied with such statute or legislation.

Any controversy or dispute arising out of or relating to this Insurance, or the breach, termination formation or validity of this Insurance, shall be resolved in accordance with the procedures specified in this Clause K, which shall be the sole and exclusive procedures for the resolution of any such controversy or dispute.

(1)  **Negotiation**

It is understood that the **Insured** and the Insurers shall first attempt in good faith to promptly resolve any dispute, controversy or claim arising out of or relating to the Policy by informal negotiations between executives who have authority to settle it.

If the dispute, controversy or claim is not resolved by such good faith means within 60 days of either party first giving the other party notice of such dispute, controversy or claim, either party may then initiate Mediation as provided in Clause K(2) below.

(2)  **Mediation**

If the dispute, controversy or claim has not been resolved by Negotiation in accordance with Clause K(1) above, the parties will try to settle the dispute, controversy or claim by mediation under the then current CPR Institute for Dispute Resolution mediation procedure.  The neutral third party will be selected from the CPR Institute Panel of Neutrals with the assistance of the CPR Institute.

(3)  **Arbitration**

Any controversy or dispute arising out of or relating to this insurance, or the breach, termination formation or validity of this insurance, which has not been resolved by Negotiation under Clause K(1) above or Mediation under Clause K(2) above, shall be settled by binding arbitration in accordance with the then current CPR Institute for Dispute Resolution Rules for Non-Administered Arbitration of Business Disputes or, if both parties agree, to the binding arbitration of three arbitrators in accordance with the following procedure:
. . . .

(4) **Suit Against Insurers**

> This Clause K(4) is not intended and shall not be deemed to conflict with or override the obligations of the **Insured** or the Insurers under this Policy to resolve any dispute, controversy or claim by Negotiation, Mediation or Arbitration as provided elsewhere in Clause K. This Clause K(4) is intended as an aid to compelling or enforcing Arbitration, not as an alternative to Arbitration.

(Doc. 27-2 at 12-13) (emphasis in original).

Item H of the Declarations, as referenced in Clause K of the General Insuring Conditions of the Policies, provides that Missouri law governs:

> H. **GOVERNING LAW AND JURISDICTION (in accordance with Clause K of the General Insuring Conditions of this Policy):**
>
> (1) Law:           This Insurance shall be governed by and construed in accordance with the Laws of the State of Missouri in the United States of America.
>
> (2) Jurisdiction:   United States of America in accordance with the provisions of the SERVICE OF SUIT CLAUSE (U.S.A.) NMA 1998, with service of process to be made upon Mendes and Mount N.Y.

(Doc. 27-2 at 9) (emphasis in original).

## IV. Discussion

Foresight moves to remand, arguing that the case was improperly removed and must be remanded to state court because the Court lacks subject matter jurisdiction. Foresight asserts that the Court's federal question and removal jurisdiction depend on the applicability of the Convention Act, which it argues does not apply here.[1] Foresight states that Missouri law, the law governing the Policies, prohibits mandatory arbitration clauses in insurance policies, and argues that Missouri law "reverse preempts" the Convention in light of the McCarran–Ferguson Act, 15 U.S.C. §§ 1011-1015

---

[1]No party asserts that diversity jurisdiction exists in this matter.

(2012). Foresight contends that the arbitration clauses in the Nine Insurers' policies are invalid and unenforceable under the Missouri Uniform Arbitration Act, § 435.350 of the Missouri Revised Statutes. The statute provides in pertinent part:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract, *except contracts of insurance* and contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Mo. Rev. Stat. § 435.350 (2010) (emphasis added).

The Nine Insurers oppose the motion to remand, asserting that federal question jurisdiction exists by virtue of the Convention, "an international treaty guaranteeing the reciprocal enforcement of international arbitration agreements and conferring exclusive jurisdiction in the federal courts." (Doc. 27 at 3.) The Nine Insurers assert that the Convention supersedes both Missouri's anti-arbitration law and the McCarran–Ferguson Act, and therefore this Court has original jurisdiction over the action brought by Foresight.

A.  Application of the Convention Act

The Convention is a multinational treaty. Congress amended Chapter 2 of the FAA in 1970 to aid in the enforcement of the Convention, 9 U.S.C. §§ 201-208 (2012). In this Memorandum and Order, the Court refers to Chapter 2 of the FAA as the "Convention Act," to distinguish the implementing legislation from the treaty itself, the Convention.

The Convention Act permits removal of state court actions involving arbitration agreements that fall under its purview. The Convention Act applies to an "arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as

commercial" unless the agreement arises out of a relationship "entirely between citizens of the United States." 9 U.S.C. § 202.

Foresight argues in its reply memorandum that the policies issued by the Nine Insurers are not "'international agreements' containing 'international arbitration provisions'" subject to the Convention Act. (Doc. 33 at 5.) Foresight contends the case should be remanded "for this reason alone" because the Nine Insurers have "failed to prove that each is a foreign citizen" and "have submitted no evidence of their citizenship." (Id. at 6-7.)

This contention is incorrect. If the Court has subject matter jurisdiction over this action based on Chubb's removal under the Convention Act, then it would have supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over claims concerning policies that are not subject to the Convention Act, as these are part of the same case or controversy. See ESAB Group, Inc. v. Zurich Ins. PLC, 685 F.3d 376, 380, 393-94 (4th Cir. 2012); Pinnoak Resources, LLC v. Certain Underwriters at Lloyd's, London, 394 F.Supp.2d 821, 828 (S.D. W. Va. 2005).

Further, the Corrected Petition alleges in pertinent part:

> 6. Upon information and belief, Defendants Certain London Market Insurers (collectively "London Market Insurers") comprises individuals, unincorporated associations, partnerships and/or corporations existing under the laws of various jurisdictions subscribing to the policies. London Market Insurers include Great Lakes Reinsurance (UK) PLC; AIG Europe Limited; Lloyd's Syndicate AML 2001; International Insurance Co. of Hannover Plc; PartnerRe Ireland Insurance Limited; and SCOR (UK) Company Limited. . . . .

(Doc. 3 at 3, ¶ 6.) Foresight's pleading alleges that at least two United Kingdom-based entities comprise part of defendant London Market Insurers. The Nine Insurers admit the allegations of this

paragraph in their Answer.[2]  (Doc. 32 at 2, ¶ 6.)  This is sufficient to establish that at least one of the arbitration agreements in the Nine Insurers's policies does not arise out of a relationship "entirely between citizens of the United States."  9 U.S.C. § 202.

B.  <u>Reverse Preemption Under the McCarran–Ferguson Act</u>

The Court turns to Foresight's argument that under the McCarran–Ferguson Act, the Convention Act is reverse preempted by Missouri law.  In most instances, the Supremacy Clause of the United States Constitution mandates that a state law give way to a conflicting federal law. <u>See</u> U.S. Const., Art. VI, cl. 2; <u>Kurns v. Railroad Friction Prods. Corp.</u>, 565 U.S. 625, 630 (2012). In 1945, Congress enacted the McCarran–Ferguson Act, which imposes a "clear-statement rule" that "state laws enacted 'for the purpose of regulating the business of insurance' do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise."  <u>United States Dep't of Treasury v. Fabe</u>, 508 U.S. 491, 507-08 (1993).  "Congress declared in the McCarran–Ferguson Act that it intended to create a default rule preserving a state-by-state scheme for regulating insurance and providing that congressional silence on insurance regulation must not be interpreted to preempt state law."  <u>Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London</u>, 587 F.3d 714, 745 (5th Cir. 2009) (en banc) (Elrod, J. dissenting); <u>see</u> <u>Fabe</u>, 508 U.S. at 500; 15 U.S.C. § 1011.

The McCarran–Ferguson Act provides in pertinent part, "No Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of

---

[2]In their Answer, the Nine Insurers do not admit or deny Foresight's allegations concerning the citizenship of the other remaining defendants.  (Doc. 32 at 2-3.)

insurance."  15 U.S.C. § 1012(b).  "Thus, McCarran-Ferguson authorizes 'reverse preemption' of generally applicable federal statutes by state laws enacted for the purpose of regulating the business of insurance."  ESAB Group, 685 F.3d at 380.  The McCarran–Ferguson Act "transformed the legal landscape by overturning the normal rules of pre-emption."  Fabe, 508 U.S. at 507.

According to Foresight, the McCarran–Ferguson Act prevents federal preemption of state statutes regulating insurance and effectuates reverse preemption when the following three conditions are met:  (1) The federal law does not specifically relate to the business of insurance; (2) the federal law would invalidate, impair or supersede the state statute if applied; and (3) the state statute was enacted for the purpose of regulating insurance.  See Fabe, 508 U.S. at 501; Murff v. Professional Med. Ins. Co., 97 F.3d 289, 291 (8th Cir. 1996).  The Eighth Circuit applied this three-part test to reverse preempt the Federal Arbitration Act, 9 U.S.C. § 2, in Standard Security Life Insurance Co. of New York v. West, 267 F.3d 821, 823 (8th Cir. 2001), a case involving the same statute at issue in this case, § 435.350, Missouri Revised Statutes.

Foresight points to Stephens v. American International Insurance Co., 66 F.3d 41 (2d Cir. 1995), and Transit Casualty Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619 (8th Cir. 1997), to support its argument that the Convention Act is reverse preempted when the three-part test of Fabe and Murff is satisfied.  The Nine Insurers respond that the Policies' arbitration agreements are within the Convention, that the Convention is not an "Act of Congress" and thus is not subject to the McCarran–Ferguson Act and, consequently, that "the Missouri anti-arbitration law does not 'reverse preempt' the treaty."  (Doc. 27 at 7.)  The Nine Insurers claim that "every court that has analyzed the issue has determined that the Convention is not an Act of Congress," id. at 9-10, citing ESAB Group, 685 F.3d 376, and Safety National, 587 F.3d 714.

There is no Supreme Court or Eighth Circuit authority directly addressing the merits of the issue presented by the motion to remand. The precedent that does address the issue is divergent, and there is no clear consensus or uniform rationale in the circuit decisions. "Courts have struggled to determine whether the Senate's ratification of the Convention was an 'Act of Congress' that can be reverse-preempted under the McCarran–Ferguson Act." Martin v. Certain Underwriters of Lloyd's London, 2011 WL 13227729, at *3 (C.D. Cal. Sept. 2, 2011). Each side argues that the circuit court decisions supporting its desired outcome are the most persuasive, and the Court now examines those decisions.

      *1. Authority on the McCarran–Ferguson Act's Application to the Convention Act*

Foresight relies primarily on Stephens, 66 F.3d 41, in which the Second Circuit addressed the interaction between the McCarran–Ferguson Act and the Convention Act. In the Stephens case, the court first recognized that the Convention Act does not specifically relate to the business of insurance. 66 F.3d at 44. It then held that the Convention Act was reverse preempted by an anti-arbitration provision of Kentucky law enacted to regulate the business of insurance. Id. at 46. The Second Circuit rejected the argument that the Convention itself superseded the Kentucky statute under the Supremacy Clause, because it found the Convention is not a self-executing treaty and therefore it "relies upon an Act of Congress for its implementation." Id. at 45. The court stated that the Convention as a treaty, without the implementing Convention Act, is "simply inapplicable." Id. The Second Circuit reasoned that because the Convention Act was necessary to give any domestic legal effect to the Convention, the Convention Act was an "Act of Congress" under the McCarran–Ferguson Act that was reverse preempted by applicable state insurance law. Id.

Foresight also cites an Eighth Circuit case, Transit Casualty, 119 F.3d 619. At the district court level, the case was removed from state court pursuant to 9 U.S.C. § 205, and the court addressed the same issue that is before this Court – whether the McCarran–Ferguson Act protects the Missouri anti-arbitration statute from preemption by the Convention Act.[3] Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 1996 WL 938126 (W.D. Mo. June 10, 1996). The lower court analyzed the issue applying the three-part test from Fabe. Id. at *2. The parties agreed that neither the FAA nor the Convention specifically related to the business of insurance; the court determined that § 435.350 was enacted for the purpose of regulating the business of insurance; and it found that application of the Convention Act to the parties' agreements would impair, invalidate, and supersede the Missouri anti-arbitration statute. Id. The court therefore concluded that § 435.350 precluded enforcement of the arbitration clause in the parties' agreements, and as a result it lacked subject matter jurisdiction and the case must be remanded. Id.

On appeal, although the Eighth Circuit noted that Congress amended the Federal Arbitration Agreement to implement the Convention, Transit Casualty, 119 F.3d at 620, it concluded it lacked jurisdiction to review the district court's decision under 28 U.S.C. § 1447(d). Id. at 625. Because the district court determined that the McCarran–Ferguson Act prevented the Convention Act from controlling over the Missouri anti-arbitration statute, and because the parties' agreements had to fall under the Convention Act for the case to be removable under 9 U.S.C. § 205, the district court's finding that the Convention Act did not apply resulted in a lack of removal jurisdiction. Id. at 623-24. The Eighth Circuit therefore did not address the merits of the district court's decision.

---

[3]The district court in Transit Casualty referred to 9 U.S.C. § 205 as the "Convention," but it is clear the court's analysis concerned the Federal Arbitration Act's implementation of the Convention, and not the treaty itself.

The Nine Insurers cite contrary authority. In <u>Safety National</u>, 587 F.3d 714, the en banc Fifth Circuit addressed the interaction between the Convention, the Convention Act, and the McCarran–Ferguson Act, in a case involving a Louisiana statute barring the use of arbitration clauses in insurance disputes. The majority held that even assuming the Convention was non-self-executing – i.e., that it did not have any legal effect in domestic courts in the absence of implementing legislation – reverse preemption under the McCarran–Ferguson Act did not apply.[4] <u>Id.</u> at 722-23. The court first reasoned that the McCarran–Ferguson Act applies only to statutes, not treaties. <u>See id.</u> at 718 ("Congress did not intend to include a treaty within the scope of an 'Act of Congress' when it used those words in the McCarran–Ferguson Act."). The court then concluded that even though the Convention treaty has implementing legislation, it was the Convention itself, and not the Convention Act, that was being "construed" under the McCarran–Ferguson Act's language to supersede state law, because the Convention Act implements the Convention largely by reference rather than setting out the Convention's provisions within the text of the Convention Act.[5] <u>Id.</u> at 724. Because a court applying the Convention Act must also consult the Convention to ascertain the conflict with state law, the majority held it was the Convention, rather than the Convention Act, that is "construed" under the McCarran–Ferguson Act. <u>Id.</u> at 724-25. Concluding

---

[4]"A crucial distinction between a self-executing treaty and a non-self-executing one is that the former, but not the latter, can provide a judicially-enforceable source of preemptive law under the Supremacy Clause." <u>Safety National</u>, 587 F.3d at 739 (Elrod, J., dissenting) (citing <u>Medillin v. Texas</u>, 552 U.S. 491, 504 (2008)). As to non-self-executing treaties such as the Convention, "under current (and longstanding) law, it is only the implementing statute, not the non-self-executing treaty, that can be enforced by the courts so as to be capable of preemption." <u>Id.</u> at 741-42 (citing sources).

[5]As quoted previously, the McCarran–Ferguson Act provides, "No Act of Congress *shall be construed to invalidate, impair or supersede* any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b) (emphasis added).

that "the Convention, an implemented treaty, rather than the Convention Act, supersedes state law," the majority held that "the McCarran–Ferguson Act's provision that 'no Act of Congress' shall be construed to supersede state law regulating the business of insurance is inapplicable." Id. at 725. Because the McCarran–Ferguson Act did not apply to treaties, the majority concluded it could "not cause [state law] to reverse-preempt the Convention." Id. at 732.

Judge Jennifer W. Elrod, joined by two other Fifth Circuit judges, issued a vigorous dissent arguing that the majority in Safety National misconstrued the appropriate inquiry. Instead of answering the question whether the legislation implementing the Convention – the Convention Act – is an "Act of Congress" within the meaning of the McCarran–Ferguson Act, it erroneously inquired instead whether the Convention itself is an Act of Congress. Id. at 737-38 (Elrod, J., dissenting). The dissent argued that "[b]ecause a non-self-executing treaty [such as the Convention] cannot itself provide a rule of decision in U.S. courts, the only candidate for a source of federal law with preemptive force under the Supremacy Clause is the statute that implements the treaty." Id. at 737, 741-42 (citing sources). Thus, it was an Act of Congress – the Convention Act – that must be construed to supersede state law. Id. at 748. The dissent concluded that because the McCarran–Ferguson Act requires federal statutes that affect the business of insurance to do so explicitly, and the Convention's implementing statute does not do so, the Convention Act "is therefore powerless to preempt state law." Id. at 737. The dissent would have held the Convention Act was reverse preempted by the Louisiana statute, by operation of the McCarran–Ferguson Act. Id. at 752.

The dissent criticized the majority's reasoning as "essentially a play on words, which wrenches the word 'construe' from the verb phrase in which it appears in the statute . . . . The

relevant phrase is "construe[] to invalidate, impair, or supersede. Thus, 'construe' does not merely mean to refer to the text for content." Id. at 747. The dissent argued, "The contention that we are not truly 'construing' the Convention Act because we must resort to the language of the Convention to do so is logically unsupportable and foreign to the case law." Id. at 748 (citing cases). It concluded the majority "ends up supplanting the plain meaning of the unambiguous term 'Act of Congress' with a strained interpretation aimed at protecting important federal policies." Id. at 749.

In ESAB Group, 685 F.3d 376, some of the insurance policies at issue included arbitration agreements mandating the resolution of disputes in Swedish arbitral tribunals in accordance with Swedish law, but a South Carolina statute invalidated arbitration agreements in insurance policies. The district court followed the Fifth Circuit's reasoning in Safety National and referred the claims to arbitration, holding that "'the Convention, not the Convention Act, . . . directs courts to enforce international arbitration agreements,' and because the McCarran–Ferguson Act's text limits its scope to federal statutes, [it] could not disrupt the application of traditional preemption rules." Id. at 384.

On appeal, the Fourth Circuit chose not to adopt the Fifth Circuit's reasoning after it discussed the dissent in Safety National and quoted the concurring judge's comment that the dissent "'persuasively refute[d]' the majority's position that the provisions of a non-self-executing, implemented treaty have full preemptive effect." Id. at 396 (quoting Safety National, 587 F.3d at 733 (Clement, J., concurring)). The Fourth Circuit engaged in a different analysis, and began by noting that the Supreme Court has "long recognized the importance of preserving the United States' ability to 'speak with one voice' in regulating foreign commerce." Id. at 379 (citation omitted). The court referred to the rule of statutory construction that in the absence of "clear congressional intent to the contrary, we will give the statute its plain meaning," but observed that "[w]here a statute

touches upon foreign relations and the United States' treaty obligations, we must proceed with particular care in undertaking this interpretive task." Id. at 388.  The court cited the Supreme Court's observation that "[i]f the United States is to be able to gain the benefits of international accords and have a role as a trusted partner in multilateral endeavors, its courts should be most cautious before interpreting its domestic legislation in such manner as to violate international agreements." Id. (quoting Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528 (1995) (holding the Carriage of Goods by Sea Act ("COGSA") did not nullify foreign arbitration clauses contained in maritime bills of lading, and that COGSA's relevant provisions were not in conflict with the Federal Arbitration Act)).  The Fourth Circuit stated that when possible, it seeks to construe statutes consistent with obligations under international law.  Id. (citation omitted).

The court rejected the insured's argument that "Act of Congress" as used in the McCarran–Ferguson Act must be construed "to apply to every federal statute, irrespective of the international implications." Id. at 388.  It concluded the McCarran–Ferguson Act is limited "to legislation within the domestic realm," based on the Supreme Court's decision in American Insurance Ass'n v. Garamendi, 539 U.S. 396, 428 (2003), in which the Court examined the interaction between California's Holocaust Victim Insurance Relief Act of 1999 and federal executive agreements with Germany, Austria, and France.  Id. at 413.  The Fourth Circuit acknowledged the distinction between Garamendi and the matter before it, but said the Supreme Court's "statements regarding congressional intent guide[d]" its understanding of  "Congress's intent to limit the Act's scope." ESAB Group, 685 F.3d at 389.  Specifically, the court found that Garamendi "demonstrated that Congress did not intend for the McCarran–Ferguson Act to permit state law to vitiate international agreements entered by the United States." Id.

The Fourth Circuit assumed that the Convention Act is non-self-executing and held that it, as implementing legislation of a treaty, does not fall within the scope of the McCarran–Ferguson Act and is not subject to reverse preemption, because "Supreme Court precedent dictates that McCarran–Ferguson is limited to legislation within the domestic realm[.]" Id. at 388, 389-90. In concluding, the court stated,

> As we have observed, the federal government must be permitted to "speak with one voice when regulating commercial relations with foreign governments." Michelin Tire Corp. [v. Wages], 423 U.S. [276,] 285 [(1976)]. With the Convention and Convention Act, the government has opted to use this voice to articulate a uniform policy in favor of enforcing agreements to arbitrate internationally, even when "a contrary result would be forthcoming in a domestic context." Mitsubishi Motors [Corp. v. Soler Chrysler-Plymouth, Inc.], 473 U.S. [614,] 629 [(1985)]. To allow "parochial refusal[s]" to enforce foreign arbitration agreements would frustrate the very purposes for which the Convention was drafted: achieving the predictable and orderly resolution of disputes 'essential to any international business transaction' and ensuring parties are not haled into hostile or inappropriate forums.

685 F.3d at 390 (citations and parallel citations omitted). Thus, the Fourth Circuit concluded that "insurance disputes are not exempt from the Convention Act pursuant to McCarran–Ferguson's reverse-preemption rule." Id.

### 2. The Convention Act is Reverse Preempted by Missouri Law, by Operation of the McCarran–Ferguson Act

The Nine Insurers's assertion that removal jurisdiction exists in this case combines the analytical approaches taken by the Fourth and Fifth Circuits. As in Safety National, the Nine Insurers contend that the Convention itself, not the Convention Act, supersedes the Missouri anti-arbitration law and the McCarran–Ferguson Act. (See Doc. 27 at 3, 7.) The Nine Insurers argue that (1) the McCarran–Ferguson Act prohibits an "Act of Congress" from invalidating, impairing, or superseding a state law that regulates the business of insurance, (2) the Convention is not an Act of Congress, and (3) because the Convention is not an Act of Congress, the McCarran–Ferguson Act

does not apply to arbitration agreements in insurance policies issued by foreign insurers. Integrating the Fourth Circuit's reasoning in ESAB Group, the Nine Insurers also argue that the McCarran–Ferguson Act's scope is limited to legislation within the domestic realm.

The decisions on which the Nine Insurers rely, Safety National and ESAB Group, offer entirely different rationales for the results they reach. As discussed above, the Circuit Courts of Appeals that have addressed the issue have made conflicting rulings on the interplay between the Convention, the Convention Act, and the McCarran–Ferguson Act. The Court is not persuaded by the Nine Insurers's argument and the Fifth Circuit majority's holding in Safety National that courts are to construe the Convention itself, not the Convention Act, in determining whether the McCarran–Ferguson Act provides reverse-preemptive effect to state insurance law. The dissenting opinion in Safety National convincingly explicates why the majority's reasoning in that case is flawed. The dissent also persuasively explains why rules of statutory construction require the plain language of the McCarran–Ferguson Act to be followed, whether or not Congress intended or considered that Acts of Congress implementing treaties be subject to the statute:

> This interpretation contradicts the plain language of the McCarran–Ferguson Act. *In the Act, Congress prescribed a clear-statement rule for federal statutes affecting the business of insurance: uncertain provisions are to be construed not to preempt state insurance law.* See generally U.S. Dep't of Treasury v. Fabe, 508 U.S. 491, 507 (1993). In fact, Congress explicitly determined that "the continued regulation and taxation by the several States of the business of insurance is in the public interest." § 1011. It is possible that Congress intended this policy judgment to control the interpretation of Acts of Congress generally, whether or not they implemented treaties. It is also possible that Congress never considered whether Acts of Congress implementing treaties ought to be subject to the clear-statement rule of McCarran-Ferguson. It does not matter which, if either, of these narratives is correct. Such speculation has no place when we interpret a statute to say what it means and mean what it says. BedRoc [Ltd., LLC v. United States], 541 U.S. [176,] 183 [(2004)]; see also Green v. Biddle, 8 Wheat. 1, 21 U.S. 1, 89–90 (1823) ("[W]here the words of a law, treaty, or contract, have a plain and obvious meaning, all construction, in hostility with such meaning, is excluded. This is a maxim of law,

and a dictate of common sense."). There is a lively debate in the judiciary and the legal academy over the universe of interpretive methods properly available to a court where the text of a statute is unclear, but that debate is irrelevant here. How much clearer than "No Act of Congress" can Congress be?

Safety National, 587 F.3d at 750 (Elrod, J., dissenting) (parallel citations omitted and emphasis added).

The Court declines to adopt the Fourth Circuit's holding that the scope of the McCarran–Ferguson Act is limited to domestic legislation. Nothing in the plain language of the statute excludes Acts of Congress that implement treaties. "[T]he starting point in a case involving construction of the McCarran–Ferguson Act, like the starting point in any case involving the meaning of a statute, is the language of the statute itself." Fabe, 508 U.S. at 500 (quoted case omitted). "The first section of the McCarran–Ferguson Act makes its mission very clear: 'Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.' 15 U.S.C. § 1011." Id. The Supreme Court has stated that the language of Section 2(b) of the McCarran–Ferguson Act, 15 U.S.C. § 1012(b), is unambiguous. Id. at 504.

"The preeminent canon of statutory interpretation requires [courts] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" BedRoc Ltd. v. United States, 541 U.S. 176, 183 (2004) (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)). "[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous." Id. (citing cases). Thus, where statutory text is unambiguous it must be followed and resort to policy considerations or legislative history is improper. In Fabe, the Supreme Court rejected the petitioner's attempt to rely on legislative history to support his interpretation of the

McCarran–Ferguson Act where his "interpretation of the statute [was] at odds with its plain language." Fabe, 508 U.S. at 507-08.

The Fourth Circuit's reliance in ESAB Group on policy considerations related to international agreements and business transactions to support its interpretation of the McCarran–Ferguson Act is improper in light of the statute's plain language, which does not exempt from its scope Acts of Congress that implement treaties. Further, none of the Supreme Court decisions the court cites in support of its holding address a clear conflict between the McCarran–Ferguson Act and the Convention Act, and therefore the language it cites is not controlling.

Also, there are key distinctions between this case and Garamendi, on which the Fourth Circuit's holding in ESAB Group is primarily based. In Garamendi, the Supreme Court addressed a McCarran–Ferguson Act argument in the context of a conflict between state law and the President's exercise of his preeminent authority in the realm of foreign affairs, as contained in executive agreements with European nations and policy pronouncements by high-level federal officials. 539 U.S. at 421-22, 427. In Garamendi, the Court held in a 5-4 decision that the California Holocaust Victim Insurance Relief Act ("HVIRA") was impliedly preempted by conflicting federal executive authority, id. at 421, because it "compromise[d] the very capacity of the President to speak for the Nation with one voice in dealing with other governments[.]" Id. at 424.

After explaining its primary holding, the Court rejected California's final argument, that the HVIRA was preserved by the McCarran–Ferguson Act, observing there was "no need to consider the possible significance for preemption doctrine of tension between an Act of Congress and

Presidential foreign policy[.]"  Id. at 427.  It said the statutory text "makes clear the point of McCarran–Ferguson's legislative choice of leaving insurance regulation generally to the States was to limit congressional preemption under the commerce power, whether dormant or exercised." Consequently, "a federal statute directed to implied preemption by domestic commerce legislation cannot sensibly be construed to address preemption by *executive conduct in foreign affairs*."  Id. at 428 (emphasis added).

The McCarran–Ferguson Act issue was not central to the Court's holding and, unlike the present case, Garamendi did not concern a conflict between state law in an area generally reserved to the states by Congress, and an Act of Congress implementing a treaty.  The McCarran–Ferguson Act provides that "no Act of Congress" shall be construed to supersede state law regulating the business of insurance.  Here, Missouri's anti-arbitration provision falls squarely within the realm of traditional state responsibility over insurance matters, as recognized by Congress in enacting the McCarran–Ferguson Act, and the Convention Act is an "Act of Congress" within the McCarran–Ferguson Act's meaning.  The type of federal executive conduct preemption established in Garamendi simply does not apply in this case, and it is not clear that the Supreme Court would hold the McCarran–Ferguson Act cannot reverse preempt the Convention Act.

This Court finds the more persuasive Second Circuit's holding in Stephens, the dissenting opinion in Safety National, and the Western District of Missouri's decision in Transit Casualty.  The Second Circuit found that the Convention, as a non-self-executing treaty, could not itself provide the rule of decision.  It held that "[t]he Convention itself . . . [is] simply inapplicable in this instance" as the implementing legislation was the federal law of consequence.  Stephens, 66 F.3d at 45.  In determining whether Kentucky state law was preempted under the McCarran–Ferguson Act, the

court looked to the implementing statute, not the treaty, to determine if state law had been preempted by an "Act of Congress." This interpretation is the only one that does not contradict the plain language of the McCarran–Ferguson Act, and does not rely on policy considerations that need not and should not be addressed in light of the unambiguous language of the McCarran–Ferguson Act. See Safety National, 587 F.3d at 749, 751 (Elrod, J., dissenting); see also Fabe, 508 U.S. at 507-08 (resort to legislative history is inappropriate where the McCarran–Ferguson Act language is unambiguous).

A different result is not required based on the Nine Insurers's assertion that Stephens has "no precedential value" as having been subsequently questioned in Stephens v. National Distillers & Chemical Corp., 69 F.3d 1226, 1232, 1234 (2d Cir. 1995) (holding that the McCarran–Ferguson Act did not apply to the Foreign Sovereign Immunities Act ("FSIA"), so FSIA could preempt New York insurance law).[6] The two Second Circuit cases are readily distinguishable because of the unique nature of the FSIA, which codified international law as to sovereign immunity that was already a part of federal common law when the McCarran–Ferguson Act was enacted. As Judge Elrod explained:

> [T]he cases are easily distinguished. National Distillers held that the statute at issue in the case, the Federal Sovereign Immunities Act (FSIA), codified international law that was already a part of federal common law at the time Congress passed the McCarran–Ferguson Act. See id. at 1234 ("But it was not an 'act of Congress' that superseded [state] insurance law. International law, accepted by federal common law, had already done that before the FSIA came into being."); see also Verlinden B.V. v. C. Bank of Nig., 461 U.S. 480, 488 (1983) ("For the most part, [FSIA] codifies, as a matter of federal law, the restrictive theory of sovereign immunity.").

---

[6]See Doc. 27 at 14. The Fourth Circuit observed in ESAB Group that the Second Circuit "soon called its [Stephens] holding into question," 685 F.3d at 385, and the Fifth Circuit majority commented in Safety National that Stephens "is at least in tension" with the subsequent National Distillers, 587 F.3d at 731,

> McCarran-Ferguson was inapplicable because it would not require reverse-preemption of the identical federal common law rules that would have been in force had the FSIA never been enacted. See National Distillers, 69 F.3d at 1234. That unique circumstance is not present in this case. Furthermore, the FSIA specifies that it provides the exclusive means of suing a foreign sovereign in American courts. See 28 U.S.C. §§ 1604-1607 (foreign states are immune from the jurisdiction of American courts except as provided in §§ 1605-1607); see Republic of Austria v. Altmann, 541 U.S. 677, 691 (2004) (FSIA is "comprehensive statute containing a 'set of legal standards governing claims of immunity in every civil action against a foreign state . . . .' " (quoting Verlinden, 461 U.S. at 488)). By contrast, the Convention Act does not contain, nor has the Supreme Court found, a similar statement of exclusivity.

Safety National, 587 F.3d at 742, n.15 (Elrod, J., dissenting) (parallel citations omitted).

Similarly, in Suter v. Munich Reinsurance Co., 223 F.3d 150 (3d Cir. 2000), a case concerning removal under the Convention Act, then-Circuit Judge Alito explained the unique policy considerations involved in sovereign litigation under FSIA, and stated the Convention Act does not implicate the same foreign policy considerations. Id. at 163 (Alito, J., dissenting). Judge Alito emphasized that under FSIA, unlike the Convention Act, "there are '*unique* policy considerations touching on the *international relations* of the United States.' . . . . The unique policy concerns that are implicated by the FSIA are the concerns that arise when the courts of one sovereign are asserting jurisdiction over another sovereign." Id. at 163-64. In contrast, "the Convention Act, which does not regulate the interaction of states, does not involve the 'unique policy considerations' that underlie" FSIA. Id. at 165.

For the foregoing reasons, the Court will follow the Second Circuit's holding in Stephens, that the non-self-executing Convention does not provide a rule of decision for U.S. courts, and only its implementing legislation the Convention Act is capable of preempting state law. Applying the three-part test of Fabe and Murff to determine whether the McCarran–Ferguson Act prevents federal

preemption of Missouri's anti-arbitration law by the Convention Act, the Court finds that it does, as the relevant conditions are met.

The McCarran–Ferguson Act provides that "No Act of Congress" preempts state law unless the Act of Congress "specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The Convention Act is an Act of Congress that no party alleges specifically relates to the business of insurance. See Safety National, 587 F.3d at 752 (Elrod, J., dissenting) (the Convention Act does not specifically relate to the business of insurance); Stephens, 66 F.3d at 44 (same). The first part of the test is therefore met.

The Eighth Circuit has held that the Missouri anti-arbitration statute, § 435.350, Missouri Revised Statutes, is a law enacted to regulate the business of insurance. Standard Security, 267 F.3d at 823. The second part of the test is also met.

Finally, application of the Convention Act to enforce the arbitration agreements contained in the Nine Insurers's Policies issued to Foresight would "invalidate, impair, or supersede" the Missouri anti-arbitration statute, because it expressly proscribes the enforcement of arbitration provisions contained in insurance contracts. See Transit Casualty, 1996 WL 938126, at *2; § 435.350, Mo. Rev. Stat. The third part of the test is therefore met.

## V. Conclusion

Consequently, the Court concludes that § 435.350 of the Missouri Uniform Arbitration Act reverse preempts the Convention Act by operation of the McCarran–Ferguson Act, and eliminates the basis for federal jurisdiction. Because the Convention Act does not apply, it does not provide a basis for removal of this action to federal court under 9 U.S.C. § 205, and the Court does not have original jurisdiction pursuant to 9 U.S.C. § 203. The Court therefore lacks subject matter

jurisdiction over this case and it must be remanded to state court.  See 28 U.S.C. § 1447(c).  The other pending motions remain for resolution by the state court following remand.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Foresight Energy, LLC's Motion to Remand is **GRANTED**.  [Doc. 9]

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Circuit Court of the City of St. Louis, State of Missouri, for lack of subject matter jurisdiction.  28 U.S.C. § 1447(c).

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  25th  day of April, 2018.